**KROTTINGER v. MARCHAND.**

No. 15365.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 26, 1952.

Rehearing Denied Oct. 31, 1952.

Dawson, Jones, Parish & Fillmore, of Wichita Falls, for appellant.

Ray Martin and Nelson & Sherrod, all of Wichita Falls, for appellee.

HALL, Chief Justice.

Stephen Marchand sued Glen Krottinger, dba A. & A. Cab Company, in a district court of Wichita County for personal injuries which he received in a traffic accident occurring between his car and one owned by said Cab Company.

Trial was to a jury and upon their answers to certain special issues submitted the trial court rendered judgment in favor of appellee Marchand and against said appellant Cab Company, for the sum of $6,850.

The statement of facts reveals that appellant's taxicab was driven into the back of appellee's car while it was stopped in line of traffic for a red light, with sufficient force to cause appellant's driver to bump his head on some part of the car. Appellee's wife, who was sitting in the front seat with him, was thrown forward against the windshield and some bottles of medicine which she had in her hands were broken by the impact. Appellee testified that his neck immediately began to hurt and he related this information to both the driver of the taxicab and its owner and the insurance adjuster.

Appellant plead, in defense to this cause of action, a release which had been executed by both appellee and his wife, in the amount of $150, releasing appellant from all claims growing out of the accident. Appellee plead in bar thereto that said release was acquired by appellant through fraud.

Appellant's point one relates to fundamental error of the trial court in submitting issues with reference to an oral agreement which varied terms of the written release and in rendering judgment for appellee based upon jury findings in answer to said issues.

In answer to said special issues, the jury found as follows: (1) Appellee and the adjuster of appellant's insurance company entered into an oral agreement in sub-stance that if appellee would sign the release it would not become effective as a final release until the nature of appellee's personal injuries were determined. If such injuries proved to be more serious than they then thought them to be, the case would be reopened as though no release had been signed; (2) appellee relied upon such agreement; (3) he was induced to sign the release by reason of such agreement; (4) appellee's injuries later proved to be more serious; and (5) the adjuster did not in good faith intend to abide by such oral agreement.

Before a court may reverse a case based upon fundamental error, it must make its finding solely from an examination of the pleadings, the judgment and other records of the case, without the assistance of the statement of facts. White v. Glengarry Oil Co., Tex.Com.App., 156 S.W.2d 523; 3–B Tex.Jur., p. 34, sec. 683. Appellant did not attach his release to or in any way make it a part of the pleadings.

Appellant did not bring forward in his motion for new trial objections based upon the theory of law that oral evidence may not be used to vary the terms of a written instrument.

We therefore overrrule his point one.

Appellant's point two is: "The court erred in refusing to submit an issue to the jury inquiring whether or not plaintiff received an injury, because the only evidence in regard thereto came from the plaintiff himself who was an interested witness."

In answer to certain special issues submitted pertaining to appellee's injuries, the jury found: (1) The driver of appellant's taxicab failed to keep a proper lookout; (2) such failure was negligence; (3) such negligence was the proximate cause of appellee's injuries; (4) said driver failed to apply his brakes; (5) such failure was negligence and (6) was the proximate cause of appellee's injuries; and (7) the amount of damage which would compensate appellee for his injuries which were the direct and proximate result of negligence of appellant's driver.

A portion of the trial court's instruction given in connection with the issue

relating to the amount which would compensate appellee for his personal injuries is: "In answering this issue, you will take into consideration only such injuries, pains and suffering, if any, which were the direct and proximate result of the defendant's negligence, if any, and if the injuries, if any, sustained by plaintiff in such collision only aggravated or increased an existing disorder or disease, then you will consider only the extent of the increase or aggravation of the ailment or infirmity."

We find in appellant's exceptions to the court's charge where he objected to the submission of said special issues pertaining to injuries of appellee on the ground they assumed appellee suffered an injury. In all of the issues submitted pertaining to injury, the court used the saving clause "if any" at the proper place where appellee's injuries were referred to, thus: "If you have answered the foregoing special issue in the affirmative, do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the injuries, if any, to plaintiff?" Appellant nowhere made an objection to the court's charge because the trial court failed to submit an issue inquiring whether or not appellee sustained injuries as a result of the motor vehicle collision in question.

Appellant admitted that his cab ran into the rear of appellee's automobile at the time and place in question; that appellee's head was jerked back by the impact and the driver of appellant's taxicab received a cut in his forehead by striking some object in his cab as a result of the impact. Appellee testified he hit his head and hurt his neck in the collison. Dr. Hargraves, who examined appellee within a few days after the accident, testified that he was suffering from a narrowing of the intervertebral space or dislocation of a disc between the fourth and fifth cervical vertebrae, which condition, no doubt, had existed two or three years prior to the collision in question, and which was causing an arthritic condition at the time of the accident. However, he testified a jar or disturbance, such as the collision in question, could disturb this arthritic condition and cause the symptoms complained of.

Appellee also testified that his left eye bothered him to some extent after the accident and there was a difference in the condition of his eye subsequent to the accident. Dr. Adams, eye specialist, testified there was a slight dilation in the pupil of appellee's left eye; that he saw appellee in January, six days after the accident, and later saw him in March and that he had to make a change in his glasses to accommodate the dilation of the eye in question and again in November, same year. The condition described, however, was never directly connected with the alleged injury by the doctor.

Appellant offered no medical testimony contradicting in the slightest degree that appellee sustained personal injuries. However, it is thoroughly explained by appellee's doctor that he is principally relying upon subjective symptoms of appellee in determining appellee's injury, pain and suffering caused by the disturbance of his arthritic condition. Such a situation does not leave the testimony of appellee as being clear, direct and positive or free from circumstances tending to cast suspicion thereon.

■ The rule laid down in the case of Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908, is as follows: "It is the general rule that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury. But there is an exception to this rule, which is that where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." The court in that case cited with approval the holding in Springfield Fire & Marine Insurance Co. v. W'm Cameron & Co., Tex.Civ.App., 96 S.W.2d 788.

■ This point has given us much concern. We have finally concluded that the case should be affirmed. The trial court's charge does not assume that appellee had

received an injury from the collision in question but leaves such question to some extent open for a jury's determination by inserting the saving clause, "if any," after the word "injury." Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; Loughry v. Hodges, Tex.Civ. App., 215 S.W.2d 669; Eaton v. Rutherford, Tex.Civ.App., 163 S.W.2d 247; Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904; Lindley v. Franklin Fire Insurance Co., 137 Tex. 196, 152 S.W.2d 1109; Springfield Fire & Marine Insurance Co. v. W'm Cameron & Co., Tex.Civ.App., 96 S.W.2d 788; 41 Tex.Jur., p. 942, sec. 172; Rules 277 and 279, Texas Rules of Civil Procedure.

Appellant's point three is directed to error of the trial court because there was no evidence to warrant the submission of issues one and five and because said issues assumed the existence of a parol agreement which varied terms of the written release.

We find sufficient evidence to support submission of these issues relating to the fraudulent act of appellant's adjuster. We also find there is sufficient evidence to support the trial court's judgment relating to such fraudulent representations made by the adjuster and relied upon by appellee.

Appellee testified, in substance, that on the second day after the accident he told appellant's claim agent that his neck hurt him some but that he did not think he was seriously injured. The adjuster insisted that he take $110 for repairs to his car, $40 for cleaning his family's clothes and the inconvenience of being without the use of his car, and that he and his wife would both have to sign the release in order to get payment for the damage to his car but that it would be a temporary release. The adjuster further told him, "He said he would give us the check for $150.00 with the understanding that if my neck gave me any trouble I would come back in, that he would open the case up and make some provision—". Appellee further testified that after having a medical examination and finding out the seriousness of his trouble, on or about Thursday or Friday of the same week, "Immediately I went

back to the Texas Claim Service and told them I found out my neck had been hurt pretty bad and to see what they would do about it. The secretary was there and she said Mr. Werlla was not in and she told me my case had been closed and that was all there was." Appellee's wife testified to substantially the same line of thought.

■ While we do not find appellant's point three raises the question that parol evidence is inadmissible to contradict or vary the terms of a written contract, yet we feel that the evidence adduced is competent to show the release was executed conditionally and was not to take effect until after appellee had the time and opportunity to determine the extent of his personal injuries, if any. Baker v. Baker, 143 Tex. 191, 183 S.W.2d 724; Holt v. Gordon, 107 Tex. 137, 174 S.W. 1097; 32 C.J.S., Evidence, § 935, p. 857; Helmke v. Prasifka, Tex.Civ.App., 17 S.W.2d 463, writ refused.

■ We do not find appellant's contention to the effect that the issues pertaining to the parol agreement assumed the existence of such parol agreement. A portion of special issue No. 1 is as follows: "Do you find from a preponderance of the evidence that the plaintiff and the adjuster entered into an agreement, in substance, that if plaintiff would sign the release, it would not be effective (etc.) * * *? Answer: 'They did enter into such agreement' or 'They did not enter into such agreement'."

Point three is overruled.

Appellant's point four is based on error of the trial court in rendering judgment for appellee because the evidence is insufficient. For reasons heretofore stated, this point is overruled.

■ Appellant's fifth point relates to error of the trial court in failing to instruct the jury not to consider condition of the vertebrae in appellee's neck in arriving at the amount of damage because there was no evidence, or at least it was insufficient, to show the condition of his neck resulted from the accident.

From statements heretofore made in this opinion, we overrule this point.

■ Point six is addressed to error of the trial court in permitting appellee's counsel to argue that appellee had a broken neck. Appellant did not object to this line of argument. This point not being briefed, same is considered waived.

■ Appellant's point seven is directed to error of the trial court in permitting the jury to consider future mental and physical pain and suffering by appellee because there was no evidence or proof that appellee would in reasonable probability suffer mental or physical pain in the future as a result of appellant's negligence.

We overrule this point. Dallas Railway & Terminal Co. v. Davis, Tex.Civ.App., 26 S.W.2d 340; Cases cited in Missouri-Kansas-Texas Railway Co. of Texas v. Waddles, Tex.Civ.App., 203 S.W.2d 350.

Appellant's eighth point refers to error of the trial court in its failure to instruct the jury not to consider the enlarged condition of the pupil of appellee's left eye, because there was no evidence or at least insufficient evidence to show that such condition was a result of appellant's negligence.

We believe the evidence referred to above is sufficient authority for us to overrule this point.

■ Appellant's point nine is designed to secure a reduction in the amount of the judgment because the same is excessive and not commensurate with the injury shown.

At the time of trial, both the doctor and appellee testified that his neck was stiff to some extent and that its movability was somewhat impaired. We do not believe that $7,000 less the amount of $150 theretofore paid appellee by appellant is excessive. The record shows appellee was fifty-four years old at the time of the accident. He could move his head backwards but had to catch the beak of his cap and pull his head forward to its normal position.

We overrule this point.

■ Point ten refers to error of the trial court because it did not grant appellant a new trial founded upon jury misconduct, in that before answering the special issue on the amount of damages, the jurors discussed and agreed that appellant was protected by insurance and any judgment would be paid by the insurance company and not by appellant.

Some six jurors testified and their testimony is conflicting as to what happened in the jury room. Some said insurance was mentioned, while others testified that it was not, or at least they did not hear it if it was. By reason of such conflicting testimony, this court is not permitted to disturb the trial court's finding. 31 Tex. Jur., p. 57. Then too, appellant, while on the witness stand, voluntarily injected insurance into the case by his unresponsive answers to questions propounded to him: "Q. Are you familiar with the fact that it (the accident) occurred at the intersection of Seventh and Lamar? A. Yes. Q. That was reported to you? A. That was reported to me and I had him (the taxi driver) make a statement out for the insurance company." Also, appellant introduced the adjuster as a witness and the word "adjuster" was used throughout the trial, including the special issues.

We overrule this point. Aguilera v. Reynolds Well Service, Inc., Tex.Civ.App., 234 S.W.2d 282; Rice v. Schiller, Tex. Civ.App., 241 S.W.2d 330.

■ Appellant's point eleven pertains to error of the trial court in refusing to grant a new trial because the jury was guilty of misconduct in that they discussed and agreed a portion of the damages awarded to the plaintiff would be paid by him as attorney's fee. Some two or three jurors testified that attorney's fee was discussed, while some two or three testified that such discussion did not occur. There were six other jurors sitting in the court room and none of them were called to testify, either on this point or on the question of insurance. The testimony being conflicting, we overrule this point under the same authority as cited in overruling the previous point.

Judgment of the trial court is affirmed.